UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIMOTHY D. WALKER et al., | : |
| Plaintiffs, | : |
| v. | :    No. 3:04cv1477 (MRK) (LEAD) |
| CITY OF WATERBURY et al., | : |
| Defendants. | : |

**RULING AND ORDER**

Plaintiffs in this case are firefighters who allege that their employer, the City of Waterbury ("the City"), deprived them of their right to substantive due process and equal protection under the Fourteenth Amendment by altering the terms of their retirement benefits. They bring this lawsuit under 42 U.S.C. § 1983, seeking money damages, attorneys' fees, and costs as a result of the claimed violation of their constitutional rights. This case has been considered, though not formally consolidated, with *Laccone v. City of Waterbury*, 3:04-CV-2139 (MRK) and *Brown v. City of Waterbury*, 3:05-CV-870 (MRK), in which other municipal employees also sue the City for similar conduct.

The procedural history of these cases is described at greater length in an earlier Memorandum of Opinion [*Walker* doc. #94] and will not be repeated here. The Court assumes familiarity with the relevant issues and procedural history of the cases. In all three suits, the Waterbury Financial Planning and Assistance Board ("the Oversight Board" or "the Board") was named as a defendant. The Oversight Board moved to dismiss in each case, arguing that it was a state agency immune from

suit under the Eleventh Amendment. On February 21, 2006, the Court issued a Memorandum of Opinion in which it granted the Board's motion to dismiss and ordered the parties to file briefs "addressing the effect of the Oversight Board's dismissal on the maintenance of these actions against the remaining parties under Rule 19(b) of the *Federal Rules of Civil Procedure*." [*Walker* doc. #94] at 19; *see also* Orders [*Laccone* doc. #61]; [*Brown* doc. #51] (dismissing the Oversight Board as a defendant).

In its brief, the City argues that Plaintiffs should not be permitted to maintain the claims in this action against the City in the absence Oversight Board because the Board is an indispensable party. In support of its position, the City states that the Board controls the City's actions, and that any judgment rendered against the City in the Board's absence would threaten the State's interests, subject the City to inconsistent obligations, and offer inadequate relief. City of Waterbury's Brief Addressing Effects of the Court Granting the Oversight Board's Dismissal [*Walker* doc. #95]. Plaintiffs do not deny that proceeding in the Board's absence would be prejudicial to the City or that granting appropriate relief might be impossible without the Board. Instead, in a one-paragraph brief, Plaintiffs argue only that dismissal of their claims against the City would be "too harsh." Plaintiffs' Brief Concerning the Effects of the Dismissal of the Defendant Oversight Board [*Walker* doc. #96].[1] After considering the parties' briefs, the Court concludes that the Oversight Board is an indispensable party and that in equity and good conscience, this action against the City should not proceed in the

---

[1] Also named as defendants in *Walker*, *Laccone*, and *Brown* are, respectively, the Waterbury Fire Fighters Association, Local 1339; the Local 353 of Council #4 of the American Federation of State, County and Municipal Employees ("AFSCME"); and the Waterbury City Employees Association. None of these unions argues that dismissal of the Oversight Board should affect the maintenance of Plaintiffs' claims against it. *See* Supplemental Briefs [*Laccone* doc. #63]; [*Brown* doc. #53].

absence of the Oversight Board. The Court therefore dismisses Plaintiffs' claims against the City without prejudice to renewal in state court.[2]

I

To determine whether a suit should be dismissed for failure to join an indispensable party, "[t]he court must initially determine whether the party should be joined as a 'necessary party' under Rule 19(a) [of the *Federal Rules of Civil Procedure*]. . . . If the nonparty is necessary but joinder is not feasible for practical or jurisdictional reasons, the court then must consider the factors set forth in Rule 19(b) to determine whether to dismiss the case." *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 681 (2d Cir. 1996). The Court has already determined that the Oversight Board is a necessary party under Rule 19(a). Memorandums of Decision [*Walker* doc. #47]; [*Laccone* Doc. #21].[3] As noted above, the Court has also ruled that the Oversight Board is immune from suit in this Court under the Eleventh Amendment and cannot be joined in this action. Therefore, the Court must determine whether dismissal is required by Rule 19(b)

Under Rule 19(b), when it is impossible to join a party described in Rule 19(a), "the court

---

[2] The Court notes that Plaintiffs in *Walker* have appealed the Court's decision to dismiss the Oversight Board. *See* Notice of Appeal [doc. #98]. Plaintiffs' appeal did not divest the Court of jurisdiction to consider the City's motion for two reasons. First, Plaintiffs' appeal is premature, since other parties and other claims remain pending in this action. *See United States v. Rodgers*, 101 F.3d 247, 251-52 (2d Cir. 1996) (holding that a premature appeal does not divest a district court of jurisdiction). Second, the present motion concerns a defendant different from the one that is the subject of the appeal. *See* 15A Charles Alan Wright et al., *Federal Practice and Procedure* § 3911, at 362-64 (2d ed. 1992) (footnotes omitted) (observing that the normal rule that an appeal divests a district court of jurisdiction "should not apply to collateral order appeals, except perhaps to foreclose the trial court from directly reconsidering the order that has been appealed").

[3] *Brown* was filed after the Court's Rule 19(a) rulings, and from initiation the suit named the Oversight Board as a defendant. For the same reasons expressed in its *Walker* and *Laccone* rulings, the Court finds that the Board is a necessary part in *Brown*.

shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Factors bearing on whether a party is indispensable include:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). A determination under Rule 19(b) is equitable in character, and therefore, the court's inquiry is necessarily a contextual and pragmatic one. *See Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984) ("[A] Rule 19(b) determination [is] more in the arena of a factual determination than a legal one . . . ."); Fed. R. Civ. P. 19 advisory committee's notes (noting that "this decision is to be made in the light of pragmatic considerations"); 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1611, at 169 (3d ed. 2001) ("Because the doctrine of indispensability is equitable in character, the court will not dismiss for nonjoinder when special circumstances would make it inequitable to do so.").

After careful consideration of the equities, the Court concludes that the Board is indispensable and that Plaintiffs should not be permitted to proceed against the City on their claims in the Board's absence. The Court reaches this conclusion for several reasons.

First, the Court does not believe that an adequate judgment can be rendered against the City in the Board's absence. The legislative act that created the Board (the "Special Act") authorizes it to, among other things: review and approve or reject the City's budget and financial plans; set the terms of the City's collective bargaining agreements; force the City to implement cost-reducing

measures; act as a binding arbitration panel in any labor contracts subject to binding arbitration; and override "any action or decision of the mayor, Board of Alderman or other city employee [that] affects the economic viability of the city." 2001 Conn. Spec. Act No. 01-1, at §§ 11-12 [hereinafter Special Act]. The Special Act thus requires Board approval for any change to the City's collective bargaining agreements or budget. In financial matters, the Act subordinates the City's decision-making power to the Board's.

When a subordinate is sued in absence of its superior, "the superior . . . is an indispensable party if the decree granting the relief sought will require [it] to take action, either by exercising directly a power lodged in [it] or by having a subordinate exercise it for [it]." *Williams v. Fanning*, 332 U.S. 490, 493 (1947). The Second Circuit applied this principle in *Dombrovskis v. Esperdy*, 321 F.2d 463 (2d Cir. 1963). In that case, alien seamen had submitted visa applications to the District Director for the Immigration and Naturalization Service. The District Director forwarded the applications to the State Department, which was charged with determining whether to grant them. When the aliens' applications were denied, they sued the District Director. The district court dismissed their suit for failure to join the Secretary of State, which the court found to be an indispensable party. The Second Circuit affirmed, explaining that "[t]he test is whether the decree sought would 'effectively grant the relief desired by expending itself on the . . . [party] who is before the court.'" *Dombrovskis v. Esperdy*, 321 F.2d 463, 466 (2d Cir. 1963) (quoting *Williams*, 332 U.S. at 494)). Because the District Director had no power to grant the visa applications – and was authorized merely to forward the applications to the State Department – the District Director was unable to grant the relief requested. Only the Secretary of State could grant such relief, and as a result he was an indispensable party. *Dombrovskis*, 321 F.2d at 465-66; *cf. Ceballos v. Shaughnessy*,

352 U.S. 599, 603-04 (1957) (concluding that the Commissioner of Immigration and the Attorney General were not necessary parties to an alien's suit against the District Director of Immigration because "the District Director is the official who would execute the deportation, [and therefore] he is a sufficient party").[4]

Like the District Director in *Dombrovskis*, the defendant in this case does not have "the ability and authority . . . to effectuate the relief which [Plaintiffs] seek[]." *Dombrovskis*, 321 F.2d at 466 (quoting *Ceballos*, 352 U.S. at 603). Without the Oversight Board's discretionary approval, the City cannot make the changes to its collective bargaining agreements that Plaintiffs request. The City may recommend changes to the Board, but the City itself is powerless to grant the desired relief. The present case is thus unlike one in which a plaintiff sues a subordinate officer who carries out an objectionable policy set by his superior. In that case, a judgment forcing the subordinate to act or desist will of itself resolve the plaintiff's complaint. *See, e.g.*, *Ceballos,* 352 U.S. at 603-04 ("Because the [named defendant] is the official who would execute the deportation, he is a sufficient party."); *Pan Am. Petroleum Corp. v. Pierson*, 284 F.2d 649, 653 (10th Cir. 1960) (finding that the

---

[4] The number of applications of the *Williams* rule declined precipitously with the adoption of Section 1391(e) of the Judicial Code in 1962. Section 1391(e) allows for suit against an officer, employee, or agency of the United States in a district where the plaintiff resides, where relevant events occurred, or where a defendant resides. Section 1391(e) enables plaintiffs to join agency heads as defendants without having to sue in the District of Columbia. *See* 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1622, at 353 (3d ed. 2001). However, even after the adoption of Section 1391(e), courts continue to adhere to the principles articulated in *Williams*. *See, e.g.*, *Associated General Contractors of America, Inc., Oklahoma Chapter Builder's Division v. Laborers Intern. Union of North America, Local 612*, 476 F.2d 1388, 1407 & n.44 (Temp. Emer. Ct. App. 1973); *Leber v. Canal Zone Cent. Labor Union*, 383 F.2d 110 (5th Cir. 1967); *Clegg v. U.S. Treasury Dep't*, 70 F.R.D. 486, 489 (D. Mass. 1976); *see also* 7 Wright et al., supra, § 1622, at 356 & n.60 ("It . . . must be remembered that the 1962 venue statute does not purport to change the rule governing the superior's indispensability even though it does eliminate the harsh consequences flowing from the earlier venue requirement. Therefore, in a suit against a subordinate government official it is still necessary to determine whether the superior must be joined.") (citing cases).

Secretary of the Interior was not an indispensable party to a suit against officers of the Interior Department's Bureau of Land Management because "the relief sought by [plaintiff] requires no action by the Secretary"); *Edgecomb v. Hous. Auth. of Town of Vernon*, 824 F. Supp. 312, 314 (D. Conn. 1993) (finding that defendants' superior was not an indispensable party because "the complaint challenges only defendants' conduct"); *Jones v. Blinziner*, 536 F. Supp. 1181, 1194 (D.C. Ind. 1982) ("In this case, it is clear that relief can be given to the parties in the absence of the [U.S.] Secretary of Health and Human Services. The plaintiffs are challenging the policy and practices of the Indiana Department of Public Welfare and not any rule, regulation or action by the Secretary . . . .").

Here, on the other hand, no act or forbearance by the subordinate alone can make Plaintiffs whole. Under such circumstances, courts have found the superior to be an indispensable party. *See, e.g.*, *Leber v. Canal Zone Cent. Labor Union & Metal Trades Council, AFL-CIO*, 383 F.2d 110, 114 (5th Cir. 1967) (finding that the Secretary of the Army was an indispensable party because "any rights the appellees may have cannot be vindicated without specific action being taken by the Secretary," since "[t]he Secretary must authorize the payment" that appellees sought); *Dombrovskis*, 321 F.2d at 465 ("Since appellee has no power to grant the relief sought by appellants, issuance of a decree against the appellee would be a useless act."); *Clegg v. U.S. Treasury Dep't*, 70 F.R.D. 486, 489 (D. Mass. 1976) (finding the Secretary of the Treasury to be indispensable in a suit in which plaintiff sought Secret Service protection, because "the statutory authorization of Secret Service protection is delegated to the Secretary, and [because] the power and responsibility to provide such protection are his alone, [so that] the named defendants are legally incapable of rendering the relief requested by the plaintiff"); *see also* 7 Wright et al., *supra*, § 1622, at 358 & n.67 (listing "[c]ases under . . . Rule 19 . . . holding various superior officials indispensable").

Second, the Court believes that proceeding with this case in the Oversight Board's absence would greatly prejudice the State. The State guarantees the bonds that the City has issued, and so any change in the City's employment-benefit arrangements may place the State treasury at risk. Indeed, the City's poor finances – which resulted in an emergency of statewide importance – were what motivated the State to create the Oversight Board and to grant it with such extensive powers. *See* Special Act § 1 (declaring that "a financial emergency exists with regard to the city of Waterbury, that the continued existence of this financial emergency is detrimental to the general welfare of the city and the state . . . and that [to resolve the emergency] it is necessary, appropriate and an essential public purpose to [provide for] . . . the creation of the Waterbury Financial Planning and Assistance Board to review the financial affairs of the city") . To adjudicate the City's financial obligations in absence of the state agency that supervises them would be to interfere with the Special Act's carefully crafted legislative solution. *See Williams*, 332 U.S. at 493 (holding that only when relief against a subordinate "could be granted without risk that the judgment awarded would 'expend itself on the public treasury or domain, or interfere with the public administration'" may a suit proceed in absence of the superior (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947))); *Seneca Nation of Indians v. New York*, 383 F.3d 45, 48-49 (2d Cir. 2004) (upholding a dismissal under Rule 19(b) where the State's absence from the suit "would undeniably prejudice the State's governmental interest in securing and protecting property rights acquired on behalf of the people of the state"); *cf. McCowen v. Jamieson*, 724 F.2d 1421, 1423 (9th Cir. 1984) (finding that a party was necessary because to proceed in its absence "would be to deprive it of the right to defend the integrity of its administrative decisions in these areas which so intimately affect its policies and procedures" (internal quotation marks omitted)).

The Court is particularly reluctant to proceed without the Oversight Board in light of the Court's prior determination that the Board is entitled to sovereign immunity. As one court has noted, to proceed in an immune party's absence would "effectively abrogate the [party's] sovereign immunity by adjudicating its interest . . . without consent." *Enterprise Management Consultants, Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989). The Second Circuit underscored the importance of sovereign immunity to the indispensability analysis in *Fluent v. Salamanca Indian Lease Authority*, 928 F.2d 542 (2d Cir. 1991), which involved an Indian tribe that had been found immune from suit. The Second Circuit held that a suit affecting the tribe was appropriately dismissed under Rule 19(b), explaining that "the emphasis placed on immunity in the weighing of [R]ule 19(b) factors" was justified by "the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent." *Id.* Therefore, "when an indispensable party is immune from suit, there is very little room for balancing of other factors set out in [R]ule 19(b), because immunity may be viewed as one of those interests compelling by themselves." *Fluent*, 928 F.2d at 548 (internal quotation marks omitted).

As with the Indian Tribes, it would undermine the Oversight Board's sovereign immunity to issue a judgment in its absence that so directly affects the sovereign interests that the Board was created to safeguard. *See* 7 Wright et al., *supra*, § 1617, at 266 ("[W]hen a state's interest would be detrimentally affected by the outcome of an action and its joinder is not feasible, it will be regarded as an indispensable party under Rule 19(b) and the suit dismissed unless the judgment can be shaped so as to provide adequate relief to the existing parties without impairing the state's rights."). Notably, no party has suggested, and the Court has been unable to discern, any way to avoid or minimize the prejudice that will result from a judgment in the Oversight Board's absence. *See Oneida Tribe*, 2002

9

WL 31005165, at *4 ("The Court is not aware of, and the parties have not suggested, any way to shape the relief in this action to lessen the prejudice to Defendants and the Absent Parties.").

Third, the Court is not persuaded that Plaintiffs will be left with no adequate remedy if the claims against the City are  dismissed for nonjoinder.  The Special Act leaves in place procedures by which municipal employees in Waterbury may challenge collective-bargaining decisions.  *See* Special Act § 20 (noting that "unless expressly provided in [the Special Act], nothing in [the] [A]ct shall affect the provisions of the Municipal Employees Relations Act . . . or the provisions of the Teacher Negotiation Act"); *see also Sch. Adm'rs of Waterbury v. Waterbury Fin. Planning and Assistance Bd.*, 276 Conn. 355, 370-71 (2005) (explaining that the Special Act "is to be interpreted so as not to supersede" the Municipal Employees Relations Act and the Teacher Negotiation Act). Indeed, other municipal employees aggrieved by the Oversight Board's arbitration decisions have challenged those decisions in state courts, where their grievances were duly considered.  *See, e.g.*, *Sch. Adm'rs of Waterbury*, 276 Conn. at 374 (holding that an "award of the oversight board, made in its capacity as the arbitration panel under the [Teacher Negotiation Act], [i]s subject to judicial review under" that act); *Local 1339, Int'l Ass'n of Firefighters v. City of Waterbury*, 274 Conn. 374 (2005) (considering an appeal from a trial court judgment that vacated an arbitration award issued by the Board);  *Poole v. City of Waterbury*, 266 Conn. 68 (2003) (considering an appeal from a trial court judgment finding that the Board's arbitration award interfered with plaintiffs' vested right to medical benefits).

Plaintiffs rightly do not claim that they would be unable to raise their federal constitutional claims in state court, and there is certainly no reason to believe that the state courts will be unable or unwilling to entertain those claims.  *See Poole*, 266 Conn. at 76 (noting that plaintiffs raised

federal constitutional claims in their Superior Court action).  Moreover, Plaintiffs may name both the Oversight Board and the City as defendants in a state action, as other plaintiffs have already done.  *See, e.g.*, *Local 1339*, 274 Conn. at 377 (listing the City and the Board as defendants in the action).  Given the availability of an alternative forum in which Plaintiffs may press their claims, the Court rejects Plaintiffs' contention that dismissal of this suit would "effectively deny these plaintiffs any remedy at all."  Pls.' Brief Concerning the Effects of the Dismissal of the Def. Oversight Board [doc. #96] at 1.

In sum, the Court concludes that all of the Rule 19(b) factors favor a conclusion that the Oversight Board is an indispensable party.  Because Plaintiffs' claims against the City cannot, "in equity and good conscience," proceed in the Board's absence, the Court dismisses all of Plaintiffs' claims against the Defendant City of Waterbury without prejudice to renewal in state court. The Court notes that the unions do not claim that the absence of the Oversight Board requires dismissal of Plaintiffs' claims against them. Therefore, Plaintiffs' claims against Defendants Waterbury Fire Fighters Association, Local 353 of Council #4 of AFSCME, and the Waterbury City Employees Association remain pending before this Court.  In light of the Court's ruling, the City's Motion for Summary Judgment [doc. #74] is DENIED as moot.

IT IS SO ORDERED,

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut on: April 3, 2006**.