# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TIMOTHY D. WALKER et al.,                          :
               Plaintiffs,          :
                               :
v.                                                 :          No.  3:04cv1477 (MRK)
                               :
CITY OF WATERBURY,                                 :
               Defendant/Cross Claimant,     :
                               :
v.                                                 :
                               :
WATERBURY FIREFIGHTERS                             :
ASSOCIATION, LOCAL 1339,                           :
               Cross Defendant.               :

## MEMORANDUM OF DECISION

Pending before the Court are Defendant City of Waterbury's Motion for Summary Judgment [doc. # 163] as to Plaintiffs' claims and its Motion for Summary Judgment [doc. # 165] as to its counterclaim against Cross Defendant Waterbury Firefighters Association, Local 1339 ("the Union"). For the reasons that follow, Defendant's Motion for Summary Judgment [doc. # 163] as to Plaintiffs is GRANTED and Defendant's Motion for Summary Judgment [doc. # 165] as to the Union is DENIED.

## I.

The facts relevant to the Motions for Summary Judgment are as follows.  In early 2001, the Connecticut legislature declared a financial emergency in the City of Waterbury ("the City"), which was unable to meet even its basic payroll obligations without immediate emergency relief.  As part of its plan to restore the City to a position of financial stability, the legislature created an Oversight Board, which was given the power to approve the City's budget, to set aside some existing contracts, and – most relevantly for this case – to act as an arbitration panel with respect to newly negotiated

collective bargaining agreements.  Under the supervision of the Oversight Board, the Union and City negotiated the terms of a new contract for the City's firefighters, whose previous collective bargaining agreement ("CBA") had expired in 1999.  The Union and the City ultimately reached an agreement, which the Union's membership subsequently ratified in a meeting on November 6, 2001. Shortly thereafter, the Union entered into a Memorandum of Understanding with the City and the Oversight Board in which the Union agreed not to challenge the new CBA or its implementation. The Union and the City then submitted the CBA to the Oversight Board, which approved it on December 14, 2001.  The new CBA was in effect from December 14, 2001 to until June 30, 2004.

The Union made some very substantial concessions in the 2001-2004 CBA.  First, under the 2001-2004 CBA, the firefighters' pension benefits accrued at 2% instead of 2.5%, as they had under the 1995-1999 CBA.  Second, while the 1995-1999 CBA allowed firefighters to retire with full pension benefits after 20 years of service, the 2001-2004 CBA required firefighters to serve for 25 years before receiving full benefits.  Third, firefighters who retired after the effective date of the 2001-2004 CBA had to make contributions to their health care premiums, whereas previous CBAs had provided medical to retirees care at no cost.  In return for these concessions, the Union received a promise that none of its members would be laid off during the term of the agreement and also procured a $ 4,000 lump sum payment to each firefighter over and above their normal salaries.

Plaintiffs were all active Waterbury firefighters and members of the Union when the 2001-2004 CBA was ratified.  They claim that the 2001-2004 CBA deprived them of benefits that had vested under the 1995-1999 CBA, which stated that "[e]ach employee shall have vesting rights in his pension benefits after ten (10) years of service regardless of the reason for termination of employment."  All remaining Plaintiffs reached ten years of service either under the 1995-1999 CBA

-2-

or in the interim between the expiration of that agreement and the ratification of the 2001-2004 CBA. They claim in this lawsuit that the denial of allegedly vested benefits violated the substantive component of the due process clause of the U.S. Constitution.[1]

In response to this lawsuit, the City of Waterbury brought a counterclaim against the Union, alleging that the Union breached the Memorandum of Understanding ("MOU") and that the City had relied on the promises in the MOU to its detriment.  In support of its counterclaim, the City presents evidence that the Union failed to inform its members of the existence of the MOU, hired outside legal counsel to investigate potential challenges to the 2001-2004 CBA, and allowed members of the Executive Board to make personal financial contributions in support of this lawsuit.  Both sides agree that the Union has not challenged the 2001-2004 CBA in its own name, although the parties disagree as to what significance should attach to that undisputed fact.

**II.**

This case reaches the summary judgment phase after a lengthy procedural history that bears mention before proceeding to the merits of the case.  The City originally moved to dismiss the complaint on the grounds that the Oversight Board was a necessary and indispensable party under Rule 19 of the *Federal Rules of Civil Procedure* and immune from suit as a state agency.  *See* Memorandum of Decision [doc. # 47] at 2.  The Court decided that the Oversight Board was a necessary party, but concluded that it did not have enough information to determine whether it was immune from suit.  *See id.* at 5.  The Court instead denied the City's Motion to Dismiss without

---

[1]   Originally, Plaintiffs also brought an equal protection claim, but Plaintiffs' counsel represented at oral argument that this claim had been abandoned.  Because Plaintiffs Fischetti, Genier, Johnston, Moffo, and Shulde only asserted an equal protection claim, these Plaintiffs are no longer in the case.

prejudice to renewal and ordered the Plaintiffs to join the Oversight Board as a party. *See id.* at 6-7. Plaintiffs filed an Amended Complaint in which they named the Oversight Board, which promptly filed a Motion to Dismiss, alleging that it was immune from suit as a state agency. *See* Motion to Dismiss Plaintiffs' Second Amended Complaint [doc. # 64].   The Court granted the Oversight Board's Motion to Dismiss, *see* Memorandum of Decision [doc. # 94], and in a separate opinion, dismissed the action in its entirety for failure to join a necessary and indispensable party, *see* Ruling and Order [doc. # 101].  Plaintiffs appealed.

In a summary order dated November 1, 2007, the Second Circuit affirmed this Court's decision that the Oversight Board was a state agency and immune from suit.  However, the Second Circuit remanded the case to consider whether, in light of the fact that the Oversight Board had since been dissolved, it should still be considered an indispensable party. *See Walker v. City of Waterbury*, No. 06-2011-cv, 2007 WL 3230757, at * 3 (2d Cir. Nov. 1, 2007).  The Court later decided that a party that no longer exists cannot be indispensable.  *See* Ruling and Order [doc. # 140] at 4. Following the close of the discovery period, the City filed the pending Motions for Summary Judgment.

### III.

The Court first considers Plaintiffs' substantive due process claim and the City's related Motion for Summary Judgement [doc. # 163].  The substantive component of the due process clause "forbids the government to infringe certain fundamental [rights] *at all*, no matter what process is provided . . . ."  *Reno v. Flores*, 507 U.S. 292, 302 (1993) (emphasis in original).  A fundamental right is one that is "so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Id.* at 303 (quotation marks and citation omitted).  Unlike in the case of procedural

due process, it is not enough to have a property right under state law.  "While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." *Local 342, Long Island Pub. Serv. Employees v. Town Bd.*, 31 F.3d 1191, 1196 (2d Cir. 1994) (citing *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985)).

Moreover,  "[f]or a state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'" *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999).

> Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action.  Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.

*Id.* at 263.  This requirement has traditionally been articulated as requiring conduct that "shocks the conscience." *Schirillo v. Town of Stratford*, No. 3:03-cv-674,2005 WL 2225927, at * 6 (D. Conn. Sept. 12, 2005) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998));  *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) ("Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." (quotation marks omitted)); *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (explaining "shocks the conscious" standard).

Thus, in order to make out a substantive due process claim, a plaintiff must show a fundamental right protected by the Constitution, a deprivation of that right, and "arbitrary" and "outrageous" state conduct that satisfies the  "shocks the conscience" standard.  The Court is

-5-

skeptical that Plaintiffs can show a deprivation of a property interest protected by state law.[2] However, the Court need not decide that issue because it is clear that Plaintiffs' claim fails on the other two prongs – they have not asserted a fundamental right protected by the Constitution and they have not shown arbitrary and outrageous conduct that shocks the conscious.

On the fundamental right prong, the Second Circuit has stated that "simple state-law contractual rights, without more," are not protected by the substantive due process clause. *Local 342*, 31 F.3d at 1196 ("Such rights are not the type of important interested that have heretofore been accorded the protection of substantive due process."); *see also Adams v. Suozzi*, 448 F. Supp. 2d 448, 456 (E.D.N.Y. 2005). The Second Circuit has also held that "improper actions taken by employers" do not violate substantive due process "simply because that employer is a government official." *McClary v. O'Hare*, 786 F.2d 83, 89 (2d Cir. 1986). Thus, the "substantive component of the Due Process Clause does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer." *Id.*; *see also Costello v. Dunn*, 811 F.2d 782, 787 (2d Cir. 1987) ("The substantive component of the due process clause protects citizens only from abuses of governmental authority, and does not provide a remedy to a public employee that would not be available to the private employee subject to identical conduct by

---

[2] The City argues that Plaintiffs did not have any vested rights under the CBA until they retired. It points out that the CBA states that Plaintiffs had "vesting rights" after ten years, not *vested* rights. Plaintiffs point to *Poole v. City of Waterbury*, 266 Conn. 68 (2003), which interpreted the same contractual language at issue here as providing some form of vested rights. However, as the City points out, the plaintiffs in *Poole* were all retirees. *See id.* at 93 ("[i]t is undisputed that active employees' benefits continue only until the expiration of the agreement."). Here, at the time the lawsuit was filed, none of the Plaintiffs had retired. Other cases suggest that Plaintiffs are only entitled to the benefits in the CBA in effect at the time of retirement. *See, e.g., AFSCME Local 818 v. City of Waterbury*, 389 F. Supp. 2d 431 (D. Conn. 2005). As noted in the text, the Court need not, and does not, resolve this issue.

his employer.").

Plaintiffs in this case have asserted a right that is both a state law contractual right and an allegedly improper action by a public employer. *Local 342* also involved entitlement payments under a collective bargaining agreement and Plaintiffs have not suggested any way of distinguishing this case from the run-of-the-mill contract dispute at issue in *Local 342*. Neither have Plaintiffs articulated any reason why this case rises above the level of standard labor dispute between a government employer and its employees. Having failed to distinguish the above-noted Second Circuit cases, each of which is directly on point, Plaintiffs do not have a fundamental right to their vested pension benefits that is protected by the substantive component of the due process clause of the Constitution.

Even if Plaintiffs had asserted a fundamental right protected by the Constitution, their claim would still fail. For there was nothing arbitrary, outrageous, or conscious-shocking about the City's conduct in this case, even taking the evidence in the light most favorable to Plaintiffs. The Court says this for several reasons. First, the City was facing a severe financial crisis, making it eminently reasonable that it should attempt to renegotiate its pension obligations. In fact, the Connecticut legislature, through the Oversight Board, essentially required the City to renegotiate its contracts in order to receive state emergency funds. It would have been more outrageous for the City to allow itself to go bankrupt because it refused to renegotiate its pension obligations. In that case, Plaintiffs may have been left without a pension at all.

Second, the 2001-2004 CBA was not imposed unilaterally on the Union. Instead, it was subject to extended negotiations between the Union and the City and was thereafter ratified by the Union's membership. Moreover, the Union received some benefits in return, including a lump sum

payment of $ 4000 for its members and a promise that none of its members would be laid off during the duration of the 2001-2004 CBA.  Plaintiffs argue that there were no real negotiations and that the Union was coerced into accepting the 2001-2004 CBA, although they have provided no evidence to that effect.  At most, the record suggests that the Union felt pressure to accept the 2001-2004 CBA because of the urgency of the City's financial crisis, the same reason that was driving the City to renegotiate its pension obligations.  Plaintiffs were obviously unhappy with the result of the negotiations, but that does not mean that the City's conduct was arbitrary or outrageous or that it rose to the very high level required by the "shock the conscious" standard..

Finally, Plaintiffs could have challenged the 2001-2004 CBA either through the Union's grievance procedures or in state court, and they failed to do so.  The substantive due process clause does not apply to governmental actions that are correctable in a state court lawsuit.  *See Natale*, 170 F.3d at 263; *see also Schirillo,* 2005 WL 2225927, at * 6 (D. Conn. Sept. 12, 2005)  (granting summary judgment on substantive due process claim in part because "[a]ny wrongful denial could have been redressed through grievance and arbitration procedures" but that "plaintiffs failed to pursue these remedies in the manner delineated by the contract terms").  Plaintiffs have presented no evidence whatsoever that they were barred or prevented from challenging the 2001-2004 CBA in state court.  Therefore, any injustice Plaintiffs perceive in the 2001-2004 CBA could have been corrected at the state level.

Because Plaintiffs have failed to show either a fundamental right or that the City's conduct was arbitrary and outrageous, their substantive due process claim must fail.  The Court thus grants summary judgment to the City on Plaintiffs' claim.

## IV.

That leaves the City's Motion for Summary Judgment [doc. # 165] as to the Union on the City's claim of detrimental reliance.  The City argues that the Court can determine that the Union breached the Memorandum of Understanding as a matter of law; in other words, that no rational jury could find otherwise.  The Court disagrees.  First, it is undisputed that the Union did not challenge the 2001-2004 CBA in its own name and, in fact, made a conscious decision not to challenge it.  The City's argument is that by failing to inform its members of the existence of the MOU, by consulting with outside legal counsel to investigate potential challenges (which were never brought), and by allowing members of the Executive Board to make personal financial contributions to fund this lawsuit, the Union effectively induced its members to violate the MOU on the Union's behalf.

This may well be a theory of the evidence that a jury accepts.  However, a jury could also conclude that the Union could not have prevented its individual members from filing a lawsuit and that Plaintiffs would have filed this action even if they were aware of the MOU's existence.  There is certainly no evidence in the record that knowing about the MOU would have changed Plaintiffs' decision to challenge the CBA.  A jury could also conclude that the Union's actions were consistent with an attempt to appease its unhappy members rather than an attempt to breach the MOU.  For instance, perhaps the Union consulted outside legal counsel (all but one of whom said that there was no viable legal claim) in order to prove to its members that challenging the CBA would be futile.  If this was the Union's plan, it obviously did not succeed.  But in that circumstance, the Court does not see how the Union's actions would constitute a breach of the MOU.  On the other hand, perhaps the evidence will show that at every point the Union fanned the flames of unhappiness and did whatever it could to encourage the filing and pursuit of this action.  Such evidence would lend

support to the City's claim.

What is apparent, however, is that the full facts regarding this claim are not yet known and those facts that the City does tender to the Court are not sufficient to allow the Court to rule on this issue as a matter of law.   Therefore, the Court denies summary judgment to the City on its counterclaim against the Union.

### V.

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment [doc. # 163].  The Clerk should enter judgment for Defendant and against Plaintiffs.  The Court DENIES Defendant's Motion for Summary Judgment [doc. # 165] as to the Defendant's counterclaim against the Union.  The Court will issue a separate trial scheduling order for the trial of Defendant's counterclaim against the Union.


IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: March 6, 2009.**